**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

ROBERT WALDRON,

Plaintiff,

v.

SPORTSMAN'S WAREHOUSE HOLDINGS, INC.,
JON BARKER, MARTHA BEJAR, PHILIP C.
WILLIAMSON, CHRISTOPHER EASTLAND,
GREGORY P. HICKEY, RICHARD MCBEE, and JOSEPH P. SCHNEIDER,

Defendants.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND**

Plaintiff Robert Waldron ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.  This is an action against Sportsman's Warehouse Holdings, Inc. ("Sportsman's" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Sportsman's by Great Outdoors Group, LLC ("Great Outdoors") and Phoenix Merger Sub I, Inc., a wholly-owned subsidiary of Great Outdoors Group.

1

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Sportsman's common stock.

7. Defendant Sportsman's, together with its subsidiaries, operates as an outdoor sporting goods retailer in the United States. The Company is incorporated in Delaware and has several stores located in Colorado. The Company's common stock trades on the Nasdaq under the ticker symbol, "SPWH."

8. Defendant Jon Barker ("Barker") is President, Chief Executive Officer, and a director of the Company.

9. Defendant Martha Bejar ("Bejar") is a director of the Company.

10. Defendant Philip C. Williamson ("Williamson") is a director of the Company.

11. Defendant Christopher Eastland ("Eastland") is a director of the Company.

12. Defendant Gregory P. Hickey ("Hickey") is a director of the Company.

13. Defendant Richard McBee ("McBee") is a director of the Company.

14. Defendant Joseph P. Schneider ("Schneider") is a director of the Company.

15. Defendants Barker, Bejar, Williamson, Eastland, Hickey, McBee, and Schneider are collectively referred to herein as the "Individual Defendants."

16. Defendants Sportsman's and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On December 21, 2020, Sportsman's announced that it had entered into a definitive agreement to join the Great American Outdoors Group. As part of the agreement, Sportsman's would be acquired for $18.00 per share in cash. The press release announcing the merger states, in pertinent part:

**Sportsman's Warehouse to join The Great American Outdoors Group to better serve outdoorsmen and women**

**Historic union of world's finest outdoor brands to further strengthen steadfast commitment to customers and conservation**

December 21, 2020 17:15 ET | **Source:** Sportsman's Warehouse Holdings, Inc.

SPRINGFIELD, Mo. and WEST JORDAN, Utah, Dec. 21, 2020 (GLOBE NEWSWIRE) -- In an effort to better serve its loyal customers, Sportsman's Warehouse has entered into a definitive agreement to join the Great American Outdoors Group, parent company of Bass Pro Shops, Cabela's, White River Marine Group and a collection of nature-based resorts. The Great American Outdoors Group will remain a private company with a long-term view to do what is best for

3

its customers, team members and conservation initiatives. As part of the agreement, Sportsman's Warehouse will be acquired for $18.00 per share in cash.

\* \* \*

**About The Great American Outdoors Group**

The mission of the Great American Outdoors Group is to inspire everyone to enjoy, love and conserve the outdoors:

- **Bass Pro Shops and Cabela's**: As an avid young angler, Johnny Morris founded Bass Pro Shops in 1972 with eight square feet of space in the back of his father's liquor store in Springfield, Missouri, the company's sole location for its first 13 years of business. Johnny has turned his unending love of the outdoors into a company that serves millions of outdoor enthusiasts across the United States and Canada. Bass Pro Shops united with Cabela's in 2017. Today, they operate 169 stores and more than 500 million outdoor enthusiasts visit its websites annually.

- **About White River Marine Group**: In 1978, Johnny revolutionized the marine industry when he introduced Tracker Boats, the first professionally rigged and nationally marketed boat, motor and trailer package. The popularity of Tracker Boats exploded and they have been the number one selling fishing boat brand in America for the last 42 years. White River Marine Group offers an unsurpassed collection of industry-leading brands. Collectively known as White River Marine Group, today the family of brands is the world's largest manufacturer of boats. In 2019, the company partnered with Textron to launch TRACKER OFF ROAD, offering a full line of ATVs and side-by-sides.

- **About Our Nature Resorts:** The company also operates a thriving hospitality division with award-winning nature resorts and attractions including Big Cedar Lodge in Missouri's Ozark Mountains. Located in the heart of Missouri's Ozark Mountains, Big Cedar Lodge is America's premier wilderness resort. A passion of Bass Pro Shops' founder, the 4,600-acre lakeside retreat connects families to the outdoors with a variety of nature-based experiences including fishing, boating, hiking, spa and wellness offerings, hosting 2.4 million guests annually. Signature attractions include Top of the Rock, home to world-class golf, dining, and entertainment; and Dogwood Canyon Nature Park, a 10,000-acre nonprofit wildlife nature park. Named "Number One Resort in the Midwest" by the readers of *Travel + Leisure*, the resort offers genuine Ozarks hospitality and a convenient location just south of Branson, Missouri.

**About Sportsman's Warehouse**

4

- Since its start in West Jordan, Utah over 30 years ago, Sportsman's Warehouse has been providing outdoor enthusiasts with quality merchandise in a friendly, low-key shopping environment and is a leading outdoor specialty company based in the Western U.S with 112 store locations. The company is admired for its successful formula of ultra-convenient stores sized right for the communities they serve, highly trained employees with an understanding of local equipment preferences, and a data-driven local marketing focus.

Much like Bass Pro Shops, the company was founded on the principle of being good stewards of the outdoors and protecting and preserving wildlife habitats. Today, Sportsman's Warehouse is known for its top-quality, brand-name products, obsessive customer service and deep ties to conservation groups across the country.

**Transaction Overview**

The merger agreement was unanimously approved by Sportsman's Warehouse's Board of Directors. The transaction, which is expected to close in the second half of 2021, will be completed through a cash merger and is subject to approval by Sportsman's Warehouse's shareholders, as well as regulatory approvals and other customary closing conditions. The transaction is not subject to any financing condition. The entities will continue to operate independently until the transaction closes.

J.P. Morgan Securities LLC served as lead financial advisor; Moelis & Company served as an additional financial advisor to the Great American Outdoors Group and King & Spalding LLP served as the Great American Outdoors Group legal counsel, with expert assistance from Debevoise & Plimpton LLP. Baird served as exclusive financial advisor to Sportsman's Warehouse. O'Melveny & Myers served as legal counsel to Sportsman's Warehouse.

18. On February 16, 2021, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

19. The Proxy Statement, which recommends that Sportsman's shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Sportsman's financial projections; (ii) the financial analyses performed by Sportsman's financial advisor, Robert W. Baird & Co. Incorporated ("Baird"), in connection with its fairness

5

opinion; (iii) potential conflicts of interest involving Baird; and (iv) potential conflicts of interest involving Company insiders.

20. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Reasons for the Merger; Recommendation of the Board; (ii) Certain Company Forecasts; and (iii) Opinion of Robert W. Baird & Co. Incorporated.

21. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Sportsman's shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning Sportsman's Financial Projections**

22. The Proxy Statement omits material information concerning Sportsman's financial projections.

23. The Proxy Statement provides that, in early November 2020, "management prepared its projections of Sportsman's Warehouse's future financial performance for fiscal years 2020 through 2023 (which we refer to as the "Three Year Management Projections") in response to a due diligence request from Great Outdoors Group." The Proxy Statement further provides that, on November 16, 2020, Robert Julian, the Chief Financial Officer of Sportsman's, "reviewed for the Board the Three Year Management Projections, including each of the key assumptions and inputs used by management in preparing the Three Year Management Projections." After concluding this discussion, the Board authorized and adopted the Three Year Management Projections and approved delivery of the Three Year Management Projections to Great Outdoors in connection with the Potential Transaction.

24. The Proxy Statement, however, fails to disclose "each of the key assumptions and inputs used by management in preparing the Three Year Management Projections."

25. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

26. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning Baird's Analyses**

27. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Baird.

28. The Proxy Statement fails to disclose the following concerning Baird's "*Discounted Cash Flow Analysis*": (1) the projected unlevered free cash flows of Sportsman's from 2020 to 2025, and all underlying line items; and (2) the individual inputs and assumptions underlying the (i) discount rates ranging from 8.75% to 11.75%, and (ii) terminal values ranging from 7.0x to 8.5x year 2025 EBITDA.

29. With respect to Baird's "*Transaction Premiums Paid Analysis*," the Proxy Statement fails to disclose each transaction and the individual premiums paid therein.

30. The valuation methods, underlying assumptions, and key inputs used by

7

Baird in rendering its purported fairness opinion must be fairly disclosed to Sportsman's shareholders. The description of Baird's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Sportsman's shareholders are unable to fully understand Baird's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Baird

31.     The Proxy Statement omits material information concerning potential conflicts of interest involving Baird.

32.     The Proxy Statement provides that, "[p]ursuant to its engagement, Baird will receive a transaction fee of approximately $7.6 million for its services, substantially all of which is contingent upon the consummation of the merger."

33.     The Proxy Statement, however, fails to disclose what amount of Baird's fee is contingent upon the completion of the Proposed Transaction. This is material, given, *inter alia*, Baird's key role in facilitating the Proposed Transaction and that "substantially all of [Baird's fee] is contingent upon the consummation of the merger."

34.     The Proxy Statement provides that "Baird is a full service securities firm [that] . . . may from time to time provide *investment banking, advisory, brokerage and other services to clients*[.]" (emphasis added).

35.     The Proxy Statement, however, only provides that, "[o]ver the past two years, Baird has not provided *investment banking services* to Sportsman's Warehouse or Great Outdoors Group." (emphasis added). Thus, the Proxy Statement fails to disclose the timing and nature of

8

any past "*advisory, brokerage and other services*" Baird performed for Sportsman's, Great Outdoors, and/or their affiliates, including the fees received or expected to be received by Baird for providing each service. (emphasis added).

36. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

37. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

38. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

39. Defendant Barker stated the following in the Company's December 21, 2020 press release announcing the Proposed Transaction:

> "We are excited to be joining the Great American Outdoors Group. This merger brings together the greatest brands in the outdoor industry. As we look to the future, the combined entities provide our passionate associates with greater opportunities to serve the outdoor enthusiast. I couldn't be more proud of the nearly 8,000 Sportsman's Warehouse associates and their success in building our brand over the last 33 years. We look forward to a smooth transition and building our partnership," said Sportsman's Warehouse CEO Jon Barker.

40. The Proxy Statement, however, fails to adequately disclose the extent to which Great Outdoors' proposals or indications of interest mentioned management retention or equity participation in the combined company.

41. Any communications regarding post-transaction employment during the

negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

45. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

46. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote

on the Proposed Transaction.

47. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

48. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

49. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants on the special committee and certain Individual Defendants serving on the Board to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

53. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

   A.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

   B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

   C.  Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

   D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

   E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 6, 2021         Respectfully submitted,

                **HALPER SADEH LLP**

                By: /s/ Daniel Sadeh
                Daniel Sadeh, Esq.
                Zachary Halper, Esq. (to be admitted *pro hac vice*)
                667 Madison Avenue, 5th Floor
                New York, NY 10065
                Telephone: (212) 763-0060
                Facsimile: (646) 776-2600
                Email: sadeh@halpersadeh.com
                    zhalper@halpersadeh.com

                *Counsel for Plaintiff*